**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**THEODORE GLADYSZ,**

        **Petitioner,**

**v.**
                                  **Civil Action No. 1:08cv75**
                                  **Criminal Action No. 1:06cr90(2)**
                                    **(Judge Keeley)**

**UNITED STATE OF AMERICA,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

### I. Facts

**A. Factual History**

On February 23, 2006, the petitioner sold to a confidential informant .89 grams of crack cocaine base for two hundred and sixty dollars. The petitioner sold it on Maude Street at the intersection of Jesse Street, in Clarksburg West Virginia, which was located within one thousand feet of the Monticello Avenue Playground. Petitioner plead guilty to count ten of the indictment, which was unlawfully, knowingly and intentionally distributing .89 grams of cocaine base, within a thousand feet of a protected area in violation of Title 21, U.S.C. § 841(b)(1)(C) and § 860. Petitioner stipulations to the total drug relevant conduct was at least 50 grams but less than 150 grams of cocaine base. Petitioner received eighty months of incarceration.

**B. Procedural History**

On February 4, 2008, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence. [CIV DE 1]. The respondent filed a Motion to Dismiss on March 31, 2008. [CIV DE 6]. The petitioner responded to the respondent's motion on April 17, 2008. This

is currently before the undersigned based on LR PL P 83.01, et seq., and Standing Order No. 4.

**C.  Federal Habeas Corpus**

The petitioner's claims are:

(1) The plea was not knowing or voluntary,

(2) Ineffective Assistance of Counsel because,

    (A) Counsel informed petitioner to withhold information from the court,

    (B) Counsel did not objecting to the relevant conduct,

    (C) Counsel did not requesting that Judge Keeley recuse herself,

    (D) Counsel did not argue for a downward departure

[CIV DE 1].

## II.  Analysis

The petitioner's claims are without merit and should be dismissed.

**(1) The plea was not knowing or voluntary,**

The petitioner claims that he was taking "multiple prescription medications when he entered his plea of guilty. . . ." [CIV DE 1] at 2. These drugs include "Ambien, Alprazolam (xanex), Effexor, Hydrocodone, and Hydromorphon[1]." [CIV DE 1] at 2. The petitioner argues that "these medications had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea." [CIV DE 1] at 2.

In order for the petitioner to be successful on his claim that he was under the influence of drugs when he pled guilty, he must demonstrate that "his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against

---

[1] It is clear from Exhibit 1 provided by the petitioner that he was not given Ambien until around January 4, 2007.

him, of comprehending his constitutional rights and of realizing the consequences of his plea." United States v. Truglio, 493 F.2d 574, 579 (4th Cir. 1974) (quoting United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970)).

The petitioner fails to meet his burden of proof. The petitioner only makes a bare allegation that his plea was involuntary because he was on "several medications" or "heavily medicated[2]." See Petitioner's Exhibit Three. However, the only drug he testified to taking was Hydrocodone, which was for the pain of a double hernia. In Court, petitioner states that he had not taken any today. [CR DE 143] at 8. While the petitioner provides the Physician's Desk Reference he has never indicated he suffered, during the Plea Hearing, from any of the side effects, nor has he asserted that the medication impaired his mental capacity during the Plea Hearing. All the petitioner suggests is that he "was under the influence of powerful opiates." [CIV DE 7] at 2. Furthermore, during the Plea Hearing the Court asked the petitioner several questions about the medication and his mental faculties.

> **THE COURT**: . . . All right. Within the last two weeks have you had any illegal controlled substance?
> **DEFENDANT GLADYSZ**: No, nothing other than what I've been prescribed.
> **THE COURT**: What have you been prescribed?
> **DEFENDANT GLADYSZ**: Just pain medication that I'm on.
> **THE COURT:** What pain medication are you on?
> **DEFENDANT GLADYSZ**: They have me on HydroCodone and I was taking Dilaudid but that was last week. I was operated on on the 20th.
> **THE COURT**: What was the surgery for?
> **DEFENDANT GLADYSZ**: A double hernia.
> **THE COURT**: Okay. And where did you have the surgery?
> **DEFENDANT GLADYSZ**: In Morgantown.
> **THE COURT**: So right now you're on HydroCodone and when you're tested following the hearing today you're going to be positive for

---

[2]He makes several allegations about being so medicated that he could not remember the Sentencing Hearing. But at that point the petitioner's plea was already tendered freely and voluntarily. Furthermore, the petitioner makes no such claim about the Pleas Hearing.

> HydroCodone because of a prescription?
> **DEFENDANT GLADYSZ**: I haven't taken any today.
> **THE COURT**: It won't matter; it will show up anyway. Did you take some yesterday?
> **DEFENDANT GLADYSZ**: Yes.
> **THE COURT**: Okay. Do you have a prescription for it?
> **DEFENDANT GLADYSZ**: Yes ma'am I do.
> **THE COURT**: Okay. And the Probation Officer's aware of that?
> **DEFENDANT GLADYSZ**: Yes.
> . . .
> **THE COURT**: All right. Do you know where you are and what you're doing today?
> **DEFENDANT GLADYSZ**: Yes ma'am.

[CR DE 143] at 7-9.

"Rule 11 counsels a district court to make further inquiry into a defendant's competence to enter a guilty plea once the court has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights." United States v. Damon, 191 F.3d 561, 564 (4th Cir. 1999) (quoting United States v. Cole, 813 F.2d 43, 46 (3d Cir.1987)).

Here, the Court complied with Rule 11. During petitioner's Plea Hearing, the Court inquired regarding what medication, if any, he had taken prior to the hearing. In response to the Court's question, the petitioner acknowledged that (1) within 24 hours of the plea hearing, he had taken HydroCodone but he was not under any influence of other medicines, or drugs; (2) he fully understood the charges against him; (3) he was guilty of the relevant count; (4) he understood and agreed with the terms of the written plea agreement; (5) his plea was voluntary and entered without coercion; (6) he had ample time to discuss his case with his counsel; and (7) he was satisfied with counsel's services. [CR DE 143].

"Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland,

956 F.2d 1290, 1299 (4th Cir. 1992), *cert. denied*, 506 U.S. 885 (1992). A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991), cert. denied, 503 U.S. 997 (1992). And, "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea. United States v. Lambey, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

There was no evidence that showed that the petitioner's mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea. Therefore, the petitioner's claim that his plea was not voluntary and knowing because he was under the influence of drugs is without merit.

**(2) Ineffective Assistance of Counsel,**

The Supreme Court has stated that for claims of IAC a defendant must show that (1) there was a deficient performance by counsel (2) and that this deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692 (1984). As the Fourth Circuit has explained, "A defendant asserting an IAC claim must therefore satisfy both prongs, and a failure of proof on either prong ends the matter." United States v. Roane, 378 F.3d 382, 406 (4th Cir. 2004).

The Supreme Court has said that in reviewing the performance of counsel, the Court must "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective...." Strickland, 466 U.S. at 689. Because this is such a difficult evaluation, the court must "indulge a strong presumption" that counsel's conduct, trial strategy, and tactics are within "the wide range of reasonable professional assistance." Id. at 689. Further, "the standard of reasonableness is highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

In order to satisfy the general prejudicial effects requirement, the defendant must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988). Furthermore, the petitioner's self-serving statement alone, insufficient to establish that, but for counsel's advice, there is a reasonable probability that he would have accepted the plea. Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Instead, the petitioner must identify objective evidence in support of his claim of prejudice. Id.

**(A) Counsel informed petitioner to withhold information from the court,**

Petitioner argues that his counsel instructed him to not inform the Court of the medications that he was on or taking[3]. [CIV DE 1] at 3. Petitioner's counsel allegedly instructed the petitioner "that he must not disclose [the medications he was on or taking] to the Court because then 'the Judge will not except your plea and I am not prepared for trial.'" [CIV DE 1] at 3. The petitioner further claims that counsel explained that if the matter went to trial that the petitioner would "get a lot more time. . . ." [CIV DE 1] at 3. Petitioner claims that counsel instructed him as such "so that the Court would except his plea. . . ." [CIV DE 1] at 4 Furthermore, the petitioner claims that the "deficient performance [of counsel] prejudiced [the petitioner] resulting in a sentence of 80 months for relevant

---

[3]The undersigned finds this argument incredibly hard to believe considering that he made the omission in open Court that he had just taken medications the previous day. But for purposes of this Report and Recommendation, the undersigned will credit this as true.

conduct that he never would have plead to with a clear mind." [CIV DE 1] at 4. However, this claim is completely without merit and is not supported by the record. As shown above in section 1, the petitioner had all of his mental faculties. Therefore, this claim should be dismissed.

**(B) Counsel did not objecting to the relevant conduct,**

This claim is completely without merit. The petitioner admitted to the relevant conduct in open Court. See [CR DE 143] at 21. In addition, there is nothing in the record to indicate that the Defendant violated his oath and committed perjury while testifying under oath in response to questions put to him by the Court. Inasmuch as petitioner told the Court under oath that his relevant drug conduct was within the range set forth in the stipulation, there would be no basis for his lawyer to contradict him by objecting to the relevant conduct. Therefore, the undersigned finds these claims to be without merit.

**(C) Counsel did not request that Judge Keeley recuse herself,**

Petitioner makes a number of claims of a neighborhood type relationship he had with the sentencing Judge and members of her family in support of his claim that his counsel should have asked the Judge to recuse herself. The undersigned personally reviewed petitioner's allegations in this regard. One of those claims is known to be patently false. In addition, even if some of the claims of being neighbors with the Judge's family and doing yard work in the Judge's yard are true, none of those claims are current as of the time of sentencing nor are they of a nature to justify counsel calling for the Judge to recuse herself. Chapter 1 of the Codes of Conduct For United States Judges, Cannon 2 provides in pertinent part:

    A.    A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

    B.    A judge should not allow family, social, or other relationships to influence judicial conduct or judgment.

28 USC §455 provides:

a. Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
b. He shall also disqualify himself in the following circumstances:
   1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
   2) where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
   3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
   4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
   5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

      i) Is a party to the proceeding, or an officer, director, or trustee of a party;
      ii) Is acting as a lawyer in the proceeding;
      iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
      iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Inasmuch as the Judge sentenced petitioner within the applicable guideline range based on a relevant conduct range petitioner agreed to, petitioner cannot show any actual prejudice. Moreover, petitioner does not assert that his neighbor relationship with the Judge or her family falls within the confines of any of the conduct outlined in Cannon 2 or 28 USC §455(b). Finally, when viewed in their totality, petitioner's allegations are insufficient to conclude that the sentencing Judge did anything which failed to promote "public confidence in the integrity and impartiality of the judiciary" or establishes that the judge allowed "family, social, or other relationships to influence

judicial conduct or judgment" in violation of Cannon 2. Moreover, there is not a shred of evidence to suggest that counsel for petitioner (Defendant) knew or had any reason to believe that the Judge had any bias whatsoever against his client so as to justify his calling for the Judge's recusal. Accordingly, the undersigned finds no merit to petitioner's claim that counsel was ineffective in failing to call for the sentencing judge's recusal.

**(D) Counsel did not argue for a downward departure**

"In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Id. at 493. Thus, "[b]arring extraordinary circumstances, . . ., an error in the application of the Sentencing Guidelines cannot be raised in a §2255 proceeding. Section 2255 provides relief for cases in which 'the sentence was in excess of the maximum authorized by law.' Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir.1999). It follows that this claim is without merit.

**III. Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be **DENIED and DISMISSED** from the Court's active docket[4].

---

[4]The undersigned notes that the government also argues that the petitioner waived his collateral rights under the waiver provision of the plea agreement:

> The above paragraph notwithstanding, the defendant will retain his appellate rights with respect to any sentence imposed above the applicable Guideline range at an adjusted offense level 34 or higher. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the aforementioned adjusted Guideline offense levels. The United States will retain the right to appeal any sentence imposed.

[CR DE 76].

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: June 27, 2008

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

Although the transcript of the petitioner's Rule 11 hearing showed that the Court informed the petitioner that the aforementioned waiver of his appellate rights might include a waiver of his right to collaterally attack his sentence under § 2255, the undersigned is not convinced that this waiver is sufficient enough to successfully bar review of the petitioner's § 2255 petition, particularly when a part of that claim is based on post plea alleged ineffective assistance of counsel. Nevertheless, the undersigned need not reach that question because the petitioner's underlying claim is without merit.